IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William C. Dobbing, Jr.,<br><br>             Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner<br>of Social Security,<br><br>             Defendant. | C/A No. 0:15-4030-MGL-PJG<br><br><br>**REPORT AND RECOMMENDATION** |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, William C. Dobbing, Jr., brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In August 2012, Dobbing applied for DIB, alleging disability beginning April 1, 2011. Dobbing's application was denied initially and upon reconsideration, and he requested a hearing

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



before an ALJ. A hearing was held on February 14, 2014, at which Dobbing appeared and testified, and was represented by Eleanor Swierk—a non-attorney representative. After hearing testimony from a vocational expert, the ALJ issued a decision on March 11, 2014 finding that Dobbing was not disabled. (Tr. 12-20.)

Dobbing was born in 1951 and was forty years old on his disability onset date. (Tr. 143.) He has a college education and past relevant work experience as a construction manager engineer. (Tr. 172.) Dobbing alleged disability due to a degenerative cervical spine, pinched nerves, post-traumatic stress disorder, heart problems, depression, arthritis, a sleep disorder, and dry eyes. (Tr. 171.)

In applying the five-step sequential process, the ALJ found that Dobbing had not engaged in substantial gainful activity since April 1, 2011—his alleged onset date. The ALJ also determined that Dobbing's degenerative disc disease and status post pacemaker implant were severe impairments. However, the ALJ found that Dobbing did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Dobbing retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) except occasional climbing ladders/scaffolds; frequent climbing stairs, balancing, stooping, kneeling, crouching, crawling; occasional overhead reaching; and no exposure to work hazards.

(Tr. 16.) The ALJ found that Dobbing was capable of performing past relevant work as a construction manager, as this work did not require the performance of work-related activities precluded by Dobbing's residual functional capacity. Therefore, the ALJ found that Dobbing was not disabled from April 1, 2011—his alleged onset date—through the date of his decision.



The Appeals Council denied Dobbing's request for review on July 25, 2015, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Dobbing raises the following issues for this judicial review:

I.  The ALJ did not perform the analysis of the treating and evaluating physician opinions required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

II. The ALJ failed to consider evidence supporting Dobbing's allegation's that he had significant mental impairments.



      III.      The ALJ failed to properly evaluate [] Dobbing's credibility.

(Pl.'s Br., ECF No. 17.)

**DISCUSSION**

**A.     Treating Physician**

Dobbing first argues that the ALJ failed to properly evaluate the opinion from his treating physician, Dr. Joseph T. Hickey. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
>> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

> With regard to Dr. Hickey's opinion, the ALJ observed the following:
>
>> In February 2014, Joseph T. Hickey, M.D., provided a medical source statement. Dr. Hickey indicated that the claimant was able to lift and carry less than 10 pounds and frequently lift and carry 10 pounds or less. The claimant was able to stand and walk 2 hours in an 8-hour workday, and was able to sit 1 hour in an 8-hour workday. The claimant was limited to no climbing, stooping, crouching, and crawling with occasional kneeling and poor balancing. Dr. Hickey further indicated that the claimant's reaching, handling, pushing/pulling, and seeing were affected and he was unable to operate machinery and was restricted from heights. Dr. Hickey opined that the claimant was unable to complete work related tasks 8 hours a day five days a week in a sustained and continuous manner. (Exhibit 16F) In finding that the claimant is limited to less than the full range of light work, I have accorded little weight to the medical opinion of Dr. Hickey, as his medical opinion regarding the claimant's limitations is significantly less than sedentary and is unsupported by the weight of evidence of record. Further, the claimant testified at [the] hearing that Dr. Hickey completed the form by asking the claimant what he subjectively could and could not do. As such, the form is more of a subjective opinion by the claimant then it is a medical opinion by Dr. Hickey.

(Tr. 18-19.)

Dobbing challenges the ALJ's evaluation of this opinion evidence. Dobbing concedes that during the hearing before the ALJ, Dobbing testified that before Dr. Hickey filled out the statement, Dobbing discussed with the doctor what Dobbing could and could not do, and Dobbing admitted Dr. Hickey limited Dobbing to lifting ten pounds based on what Dobbing told the doctor. However, Dobbing argues the ALJ erred in failing to discuss the fact that when asked on the statement, "Are you basing your opinion above primarily on the patient's subjective complaints," Dr. Hickey responded, "No, examination." (Pl.'s Br. at 18-19, ECF No. 17 at 18-19) (quoting Tr. 359). Dobbing points out that Dr. Hickey wrote that his diagnoses were confirmed by a 2007 cervical MRI and clinical examination, and he indicated throughout the statement that his opinions were based on examination. Finally, Dr. Hickey responded "yes" when asked, "Are the limitations, to the degree checked above, normally expected from the type and severity of the diagnoses in this case?" (Tr. 359.) Thus, Dobbing argues that by failing to acknowledge these statements, the ALJ's evaluation of Dr. Hickey's opinion is unsupported by substantial evidence.

The court disagrees. It is clear from the ALJ's decision that he reviewed and evaluated Dr. Hickey's entire opinion and weighed it accordingly. There is no requirement that the ALJ mention every aspect of the opinion and, in essence, Dobbing is asking the court to reweigh the ALJ's finding that Dr. Hickey's responses were more of a "subjective opinion by the claimant" than medical opinions by Dr. Hickey. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).



Dobbing also challenges the ALJ's determination that Dr. Hickey's opinion "is unsupported by the weight of evidence of record," arguing that the ALJ failed to identify or explain any inconsistencies between Dr. Hickey's opinion and the record. In contrast, Dobbing points to records documenting his diagnoses, diagnostic results indicating degenerative changes as well as spinal cord and neural compressions, and treatment notes documenting limited range of motion and radiculopathy. However, the ALJ's decision reflects consideration of these records as well as records documenting full range of motion. The ALJ also considered the notes from Dobbing's consultative examination, which reflect that Dobbing was able to walk to the examination unassisted, get on and off of the examination table, toe-walk and heel-walk, hop, and perform a full squat. The notes also showed that Dobbing sat comfortably, had a normal gait and station, had a normal Romberg's test, and had 5/5 strength in his upper and lower extremity. Thus, the decision reflects that the ALJ weighed this opinion and reasonably found, as part of his duties in weighing the evidence, that the medical findings and observations in the record did not support it. Although Dobbing may be able to point to select medical records that arguably support the opinion, he has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence.

Upon review of the ALJ's decision and the record, the court finds that Dobbing has failed to demonstrate that the ALJ's decision to afford little weight to Dr. Hickey's opinion is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion

generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted).

**B.     Step Two**

At Step Two, the ALJ found that Dobbing's degenerative disc disease and status post pacemaker implant were severe impairments, but Dobbing's alleged limitations secondary to dry eye and anxiety and depression were nonsevere impairments. Dobbing appears to challenge the ALJ's determination that his depression was a nonsevere impairment.

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

   (1)   Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
   (2)   Capacities for seeing, hearing, and speaking;
   (3)   Understanding, carrying out, and remembering simple instructions;
   (4)   Use of judgment;
   (5)   Responding appropriately to supervision, co-workers and usual work situations; and
   (6)   Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."



Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

In finding that Dobbing's depression was a nonsevere impairment, the ALJ found that his depression and anxiety "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (Tr. 14.) The ALJ also considered the four broad functional areas set out in Listing 12.00C, which include activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The ALJ found that Dobbing had mild limitations in activities of daily living. In support of this finding, the ALJ observed that Dobbing "reported that he was able to take care of his personal hygiene, cook, take care of a cat, and did household chores. The claimant further reported that he walked a half a mile each day if able." (Tr. 15.) The ALJ also found that Dobbing had no limitations in social functioning, observing that Dobbing "reported that he visited with friends and met them for lunch or dinner." (Id.) The ALJ found that Dobbing had no limitations in concentration, persistence, or pace, observing that Dobbing "reported that he could drive, shop, and managed his own finances." (Id.) Finally, the ALJ found no episodes of decompensation which have been of an extended duration. Therefore, the ALJ found Dobbing's mental impairments were non-severe as they caused "no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration," citing 20 C.F.R. § 404.1520a(d)(1). (Id.)

Dobbing argues that the ALJ erred in failing to consider Dr. Hickey's treatment notes documenting Dobbing's PTSD, severe anxiety, and severe attention deficit disorder, and Dr. Hickey's statement that Dobbing was unable to focus or work without panic attacks and that Dobbing had difficulty with depression and anxiety. Dobbing also points to Dr. Shaffer's statement



that Dobbing's concentration and timely task completion would depend upon his degree of pain and visual ability.

As a initial matter, the mere presence or diagnosis of a mental condition is insufficient to meet Dobbing's burden at Step Two; rather, he must show how it significantly limits his mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c); Bowen, 482 U.S. at 146 n.5; see also Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) ("Plaintiff's medical records establish the existence of her impairment, but the current record contains no evidence of how it significantly limits her physical or mental ability to do basic work activities."). Further, review of the ALJ's decision as a whole reveals that he considered many of the records that Dobbing contends the ALJ failed to consider. Moreover, these records, standing alone, are insufficient to demonstrate that the ALJ's determination that Dobbing's depression was a nonsevere impairment at Step Two is unsupported by substantial evidence or controlled by an error of law. See 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

Therefore, the court finds that Dobbing has failed to provide any support for his general assertions of error at Step Two, and has failed to demonstrate that the ALJ's findings at this step are unsupported or controlled by an error of law. Moreover, the court finds that, even if the ALJ erred at Step Two, Dobbing has failed to demonstrate any harm from this error, as a review of the decision

PJG

reflects that the ALJ considered Dobbing's alleged mental impairments throughout the decision.[2] See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (adopting Report and Recommendation that included a collection of cases and finding "no reversible error where the ALJ does not find an impairment severe at step two provided that he or she considers that impairment in subsequent steps").

**C.     Credibility**

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any

---

[2] Similarly, the court finds that Dobbing has failed to demonstrate that the ALJ's evaluation of Dobbing's functional limitations in concentration, persistence, or pace in determining Dobbing's residual functional capacity was unsupported by substantial evidence. As stated above, the ALJ considered the records at issue and further found that Dr. Hickey's opinions were entitled to little weight.



subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ summarized Dobbing's allegations as follows:

At the hearing, the claimant testified he was able to drive 3-4 miles. He stated he was unable to work due to arthritis in his neck and chronic dry eye. He testified that he only took Aleve for his pain. The claimant testified that he could sit 30-40



> minutes and did not stand too long. He stated that he walked one half mile a day if he was able and had no pain using his hands. He testified that he lived with a roommate and was able to take care of his grooming and dressing as well as help with household duties. The claimant testified that he had no significant pain associated with his heart and that he did not have any limitations of activities of daily living. He stated he had symptoms of depression and took a sleeping pill at night. He testified that he had never been treated by a psychologist. The claimant testified that his dry eye condition limited his ability to use the computer and drive. He stated he had problems with balance that occurred 10 minutes after standing. He testified that he could wash dishes, vacuum, and did his own laundry. In a function report received October 2012, the claimant reported that he took care of a cat, cooked, shopped, managed his own finances, and met with friends for lunch or dinner. (Exhibit 10E)

(Tr. 17.)

The ALJ found that Dobbing's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible based on the record in this case. The ALJ also stated that although he accepted Dobbing's "allegations that his symptoms limited his physical functional capacity to a mild degree, he is not credible to the extent that his capacity was so limited that he was unable to engage in substantial gainful activity consistent with the residual functional capacity that [the ALJ] assessed." (Id.) The ALJ then proceeded to summarize the medical records, Dobbing's physical and mental consultative examinations from November 2012, and the opinion evidence. The ALJ concluded, stating,

> [i]n sum, the above residual functional capacity assessment is supported by the medical evidence relating to the claimant's degenerative disc disease and status post pacemaker implant. The limitation for occasional climbing ladders/scaffolds, frequent climbing stairs, balancing, stooping, kneeling, crouching, crawling, occasional overhead reaching, and no exposure to work hazards is consistent with and supported by the opinion of the State agency consultants and the medical evidence of record as a whole. (Exhibit 4A) These limitations are further supported by the claimant's reported daily activities, as he is able to take care of his personal hygiene, walk a half mile, perform household chores, drive, shop, and take care of



>a cat. Given the evidence regarding the claimant's pain, I conclude that the claimant would be precluded from the ambulation and exertion required in work above the light level of exertion. In light of the aforementioned inconsistencies, particularly the relatively conservative treatment of the claimant's symptoms, as well as the claimant's level of daily activity, I cannot find the claimant's allegation that he is incapable of all work activity to be credible. Accordingly, I find that the claimant retains the capacity to perform work activities with the limitations set forth above.

(Tr. 19.)

Dobbing appears to challenge some of the reasons offered by the ALJ, arguing that the ALJ failed to consider the qualifying nature of some of the daily activities identified by Dobbing. Dobbing also argues that the ALJ failed to consider his long, consistent work history in accordance with SSR 96-7p.

Upon review of the records as a whole and the parties' briefs, the court finds that Dobbing has failed to demonstrate the ALJ's determination that Dobbing was not entirely credible is unsupported or controlled by an error of law. As stated above, it the ALJ's duty to weigh credibility. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Moreover, the ALJ's decision reflects that he considered and evaluated the relevant factors in weighing Dobbing's credibility, and in fact, found that due to Dobbing's pain he was limited to a light work. See 20 C.F.R. § 404.1529(c)(3). Further, even if the court were to agree with Dobbing on his challenges, the court finds that Dobbing has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law as Dobbing's daily activities and work history would be but two issues among several reasons that the ALJ offered in concluding that Dobbing's allegations lacked credibility. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the



extent that they are inconsistent with available evidence"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that Dobbing has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 13, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).